CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

3/28/2024
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
       DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, as subrogee of Washington & Lee University,<br><br>*Plaintiff,*<br><br>v.<br><br>PYE-BARKER FIRE & SAFETY, LLC (F/K/A GREER'S SUPPLY COMPANY),<br><br>*Defendant.* | CASE NO. 6:23-cv-00033<br><br>MEMORANDUM OPINION & ORDER<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant Pye-Barker Fire & Safety, LLC's Motion to Dismiss the Amended Complaint for failure to state a claim. Dkt. 8. For the following reasons, Pye-Barker's motion will be granted in part and denied in part.

## Background

Plaintiff Continental Casualty Company is an insurer licensed in Virginia. Continental provided an insurance policy to Washington & Lee for damages to its property, including the Hillel House on W. Washington Street in Lexington (the "Property"). Dkt. 20 ("Am. Compl.") ¶ 1. At some point before March 15, 2021, a range hood fire suppression system was installed at the Property. *Id.* ¶ 6. Greer's Supply Company, Inc., "performed code required inspection, testing, and maintenance ('ITM') of the system from the date of installation." *Id.* ¶ 7. Around March 2020, Pye-Barker acquired Greer's, and Pye-Barker's representatives continued to conduct the ITM at the Property. *Id.* ¶ 9. Each ITM record stated that "all required maintenance steps were taken and the system was installed according to [the] manufacturer's specifications." *Id.* ¶ 8.

1

On March 15, 2021, a fire occurred on the cooktop range in the Property's kitchenette. *Id.* ¶ 10. "After the fire started, the fusible links in the hood above the range melted, but the fire suppression system did not discharge." *Id.* ¶ 11. In addition, "the alarm sensor tied to the fusible links and the high limit temperature switch in the range did not alert the local fire department of the fire." *Id.* ¶ 12. Sprinklers in the kitchenette ceiling activated after about 45 minutes, controlling the fire. *Id.* ¶ 13.

Continental reimbursed W&L $533,766.51 for damages sustained, which in addition to W&L's $25,000 deductible, resulted in $558,766.51 in total damages. *Id.* ¶ 15. Continental asserts that, "[b]y virtue of its payments, [it] is subrogated to W&L's right or recovery against any third party, including Pye-Barker, for damages" arising out of the incident. *Id.* ¶ 16.

Continental initiated a two-count lawsuit against Pye-Barker in this Court, raising negligence and breach of contract claims. *See* Am. Compl. Pye-Barker filed a motion to dismiss the Amended Complaint, which has been fully briefed.[1] This decision does not address Third-Party Defendant New Chapco, LLC's motion to dismiss Pye-Barker's Third-Party Complaint filed against New Chapco. That motion will be addressed in another memorandum opinion.

## Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). It

---

[1] Because Continental had not alleged the citizenship of the members of Pye-Barker (an LLC), the Court issued a show cause order. Continental timely filed an Amended Complaint stating that Pye-Barker's member was a citizen of Pennsylvania, and that diversity of citizenship jurisdiction was proper. Dkts. 15, 19–21. Chambers then confirmed with the parties that, since the only change in the pleading was the naming of the citizenship of the LLC's members, that the Court can treat the motion to dismiss the original Complaint as applicable to the Amended Complaint.

does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "This pleading standard does not require detailed factual allegations." *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, "[t]o meet the Rule 8 standard and 'survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Nadendla v. WakeMed*, 24 F.4d 299, 305 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King*, 825 F.3d at 212. However, the Court need not "accept the legal conclusions drawn from the facts," or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United. Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotes omitted).

Reasoning

1. *Negligence*

Pye-Barker contends that Continental's negligence claim fails under the Supreme Court of Virginia's decision in *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244 (Va. 2019). In its view, Continental's Amended Complaint "is remarkably similar to the complaint in *Tingler*." Dkt. 9 at 6. Pye-Barker argues that the plaintiff in *Tingler* had alleged that the contractor was negligent by "failing to use proper workmanship," and by "failing to use due care," in construction, inspection and supervision of employees. *Id*. Specifically, the plaintiff in *Tingler*

3

had alleged that the defendant failed to perform certain tasks, including failing to construct a weather-proof home exterior, failure to install required flashing, and failing to use proper weather-stripping. *Id.*

The Supreme Court of Virginia concluded that "the gravamen of the case is simply that Graystone had failed to do what the contract required." *Id.* (quoting *Tingler*, 834 S.E.2d at 261). The court held that "[t]hese contractual failures by Graystone, considered in the aggregate, predominate as instances of nonfeasance, not misfeasance or malfeasance." *Tingler*, 834 S.E.2d at 261. "Applying the source-of-duty rule," the court held "that the claims of nonfeasance asserted against Graystone sound only in contract," and the trial court had not erred by sustaining a demurrer to the negligence claims. *Id.* Pye-Barker notes that the Supreme Court of Virginia had given examples of "affirmative acts of misfeasance that would support a negligence claim against a party to a contract," such as a contractor who "negligently 'swings a hammer and hits someone visiting the site,'" or a pesticide contractor who erroneously sprayed industrial grade rather than residential grade pesticide. Dkt. 9 at 7 (citing *Tingler*, 834 S.E.2d at 257). According to Pye-Barker, Continental "fails to allege any affirmative acts by Pye-Barker consisting of misfeasance akin to negligently hitting a visitor with a hammer, or negligently applying an unlicensed pesticide." Dkt. 9 at 7. Rather, Pye-Barker argues, Continental has merely alleged that Pye-Barker "committed nonfeasance by failing to perform its contractual duties." *Id.* at 8.

In response, Continental argues that its negligence claim should survive the motion to dismiss. Continental contends that Pye-Barker's argument that the negligence claim is "barred by Virginia's 'economic loss doctrine,' as set forth in *Tingler*," is "misplaced." Dkt. 16 at 4. Rather, Continental argues that it has requested relief for property damage instead of "economic damages," and that distinction renders the economic loss doctrine inapplicable. *Id.* Continental

4

further asserts that it has pleaded "misfeasance" or "malfeasance," under *Tingler*, i.e., by complaining that Pye-Barker's "defective performance of its inspections of the range hood system's alarms caused [Continental's] injury." *Id.* Continental also argues that "tort law provides proper relief for personal injury *or property damages* resulting from a hazardous product or a dangerous occurrence, while relief for loss of bargain or disappointed expectations as to quality of the product lies in contract." *Id.* at 5 (citing *Branin v. TMC Enters. LLC*, 832 F. Supp. 2d 646, 654 (W.D. Va. 2011)) (emphasis added). Accordingly, Continental argues that it has plainly alleged a viable tort claim, as it alleges that Pye-Barker's "failure to exercise reasonable care in adhering to applicable codes and industry standards caused significant damage to [W&L's] real property, instead of merely a 'relief for loss of bargain or disappointed expectations.'" *Id*.

The parties are principally arguing about whether Continental's bringing a negligence claim in this context violates either Virginia's economic loss doctrine or the source of duty rule. The economic loss doctrine provides that "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004). Underlying that rule are the "different policy considerations distinguishing the law of torts from the law of contracts," namely that tort law is focused on "the protection of persons and property from injury," while contract law seeks "the protection of bargained for expectations." *Id.*[2] A related doctrine is the source of duty rule, which "marks off 'the boundaries of civil liability' by precluding a party from recovering in tort from a defendant's breach of a contractual duty." *Landfall Tr. LLC v.*

---

[2] The Supreme Court of Virginia has described the "economic loss doctrine" as "a remedy-specific application of the source-of-duty rule." *Tingler*, 834 S.E.2d at 264.

5

*Fidelity Nat'l Title Ins. Co.*, 647 F. Supp. 3d 464, 473 (E.D. Va. Dec. 21, 2022) (quoting *Tingler*, 834 S.E.2d at 855–56); *see also Harrell v. DeLuca*, No. 22-2265, 2024 WL 1289594, at *6 (4th Cir. Mar. 27, 2024) (quoting *Tingler*, 834 S.E.2d at 255) ("Virginia's source-of-duty rule delineates the boundary between tort and contract claims to protect against 'turning every breach of contract into a tort.'"). The source of duty rule provides that "tort liability cannot be imposed upon a contracting party for failing to do a contracting task when no common-law duty of tort would have required him to do it anyway." *Tingler*, 834 S.E.2d at 255. In other words, "[a] tort action cannot be based solely on a negligent breach of contract." *Landfall Tr. LLC*, 647 F. Supp. 3d at 474. Ultimately, "the question whether the economic loss doctrine applies requires a court first to determine whether a cause of action sounds in contract or tort, ultimately by ascertaining the source of the duty violated." *Abi-Najm v. Concord Condominium, LLC*, 699 S.E.2d 483, 489 (Va. 2010) (cleaned up).

Under this precedent, allowing Continental to maintain a negligence claim would violate the source of duty rule and economic loss doctrine. Of course, "a party can, in some circumstances, show both a breach of contract and a tortious breach of duty," however "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998).

Continental fails to provide any authority that would establish the existence of a separate, common law duty owed by Pye-Barker and Greer's to W&L (and Continental). Continental cites *Harleysville Insurance Co. v. Valley Lumber and Building Materials, Inc.*, for the proposition that "[i]f the building code or fire code was violated, and that code section was designed for the early detection of and suppression of fires, then violation of that section may be negligence *per*

6

*se*." 2001 WL 34037909, at *5 (Va. Cir. Ct. Mar. 6, 2001); Dkt. 16 at 5. And while that case was not wholly dissimilar—as it concerned suit for damages as a result of a fire that started on the defendant's adjoining property—Continental's citation to negligence *per se* does not supply the missing common law duty. As the court in *Tingler* explained, "[t]he doctrine of negligence per se does *not* create a cause of action where one did not exist at common law," and the "doctrine does not create a duty of care but merely sets a standard of care by which the defendant may be judged in the common-law action." 834 S.E.2d at 261 n. 18 (cleaned up). Therefore, "the absence of an underlying common-law duty renders the presence of a statutory standard of care irrelevant." *Id.* Accordingly, in *Tingler*, the court held that negligence per se counts were properly dismissed against the original home contractor arising from the original construction of the home, because "a home builder has no freestanding, common-law duty to weatherproof a home." *Id.*

Continental also argues that the "tort law provides the proper relief for personal injury or property damages resulting form a hazardous product or dangerous occurrence, while relief for loss of bargain or disappointed expectations as to the quality of the product lies in contract." *Branin v. TMC Enters., LLC*, 832 F. Supp. 2d 646, 654 (W.D. Va. 2011) (quoting *Blake Constr. Co., Inc. v. Alley*, 353 S.E.2d 724, 726 n. 4 (Va. 1987)); Dkt. 16 at 5. However, that case concerned facts far afield from those before the Court—a car buyer who brought suit against the dealer and employee raising statutory and fraud claims—and moreover, the particular citation clarified that it was describing tort law "in the area of products liability." *Branin*, 832 F. Supp. 2d at 654. At bottom, Continental simply has not provided any authority supporting the existence of a common law duty to maintain a fire suppression system or to perform any comparable

7

maintenance that Greer's or Pye-Barker would have owed to W&L, apart from the terms of the parties' contract itself. And the Court is aware of no such common law duty.

Pye-Barker's position is further supported by the distinction between nonfeasance on the one hand, and misfeasance/malfeasance on the other. The source of duty rule "distinguish[es] between nonfeasance and misfeasance or malfeasance," the latter including scenarios like "when a home builder swings a hammer and hits someone visiting the site," or improperly spraying industrial grade pesticides, which would support tort liability notwithstanding any contract. *Tingler*, 824 S.E.2d at 261. The Court should "look through the prism of the contractual relationship to determine whether the allegations in the aggregate constitute nonfeasance or misfeasance." *Id.* Here, the allegations in the Amended Complaint about Greer's and Pye-Barker constitute nonfeasance. As in *Tingler*, the "gravamen of the case is simply that [Pye-Barker] had failed to do what the contract had required," i.e., to perform thorough and capable inspections of the fire suppression system, which were "all entwined with the breach of contract," rather than "fall[ing] outside of the contractual relationship." *See id.*

Applying the source of duty rule in particular—though also bolstered by the economic loss doctrine—the Court concludes that Continental's negligence claim against Greer's and Pye-Barker alleges only nonfeasance that "sound[s] only in contract," rather than any independent basis in a common law duty.[3] For these reasons, the Court will grant Pye-Barker's motion to dismiss Continental's negligence claim.

---

[3] The Court notes that the economic loss doctrine "permits tort recovery when the negligent actions resulted in damage to property other than the product itself." *Tingler*, 834 S.E.2d at 265; *see also Certain Underwriters at Lloyd's of London v. Roto-Rooter Servs. Co.*, No. 1:20-cv-1051, 2020 WL 13846067, at *3 (E.D. Va. Nov. 3, 2020) ("Lower Virginia state courts have also recognized the viability of contract and tort claims brought concurrently where tort damages have occurred to 'other property' not within the scope of a contract."). Nonetheless, for a plaintiff's "negligence claim to be viable, it must assert the breach of some common law or

2. *Breach of Contract*

Next, Pye-Barker argues that Continental fails to state a claim for breach of contract. In support, Pye-Barker emphasizes that Continental "does not allege the existence of any *written* contract between W&L and Pye-Barker or its predecessor Greer's, and none is attached to the Complaint." Dkt. 9 at 11 (emphasis added). Moreover, Pye-Barker complains that Continental only effectively alleges that the range hood fire suppression system was defective, but "does not allege that Pye-Barker undertook any contractual duty or opportunity to test the particular component of the hood suppression system that ultimately failed." *Id.* In fact, Pye-Barker argues, Continental "does not even allege what specific component of the system failed, so it would be impossible from the allegations in the Complaint to conclude that Pye-Barker had any such duty." *Id.* Thus, Pye-Barker challenges the sufficiency of the allegations in the Amended Complaint as establishing the content of any legal duty: writing that, without a written contract, there were no written terms and "the Complaint is completely silent as to any oral agreement between W&L and Pye-Barker." Dkt. 18 at 10–11. In other words, the thrust of Pye-Barker's argument is that the complaint fails to allege that "Pye-Barker undertook any contractual duty or opportunity *to test the particular component* of the hood suppression system that ultimately failed." Dkt. 9 at 11 (emphasis added). And, without alleging "what specific component of the system failed," Pye-Barker believes "it would be impossible from the allegations of the Complaint to conclude that Pye-Barker had any such duty." *Id.*

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation of breach of that obligation; and (3) injury

---

statutory duty owed to them by Defendant, and 'not one existing between the parties solely by virtue of the contract.'" *Roto-Rooter Servs., Co.*, 2020 WL 13846067, at *3 (quoting *McDevitt Street Bovis, Inc.*, 507 S.E.2d at 347).

9

or damage to the plaintiff caused by the breach of obligation." *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016).

Continental has adequately alleged "a legally enforceable obligation of a defendant to a plaintiff," for purposes of the motion to dismiss. *See Filak*, 594 S.E.2d at 619. In the Amended Complaint, Continental alleged that Defendant "contracted to perform ITM on the system from the date of installation in or around 2011." Am. Compl. ¶ 24. That is, Greer's and then Pye-Barker contracted to perform "code required inspection, testing, and maintenance ('ITM') of the system from the date of installation." *Id.* ¶¶ 7–11. And their ITM records "indicated all required maintenance steps were taken and the system was installed according to manufacturer's specifications." *Id.* ¶ 8. This is sufficient factual content that, taken as true, describes the metes and bounds of the oral agreement between W&L and Greer's (and then Pye-Barker), to satisfy the challenged first element of the breach of contract claim. *See Trbovich v. Garcia*, No. 3:16-cv-302, 2016 WL 10514833, at *2 (E.D. Va. 2016) ("An oral contract is enforceable in Virginia if its terms are 'reasonable certain, definite, and complete to enable the parties and the courts to give the agreement exact meaning.'") (citation omitted). To be sure, the allegations could have been more thorough. However, while Continental may not have specified the precise component of the fire suppression system that failed, the Amended Complaint alleges that Greer's and Pye-Barker had responsibility for inspecting the system as a whole, including any component that failed, and that suffices to establish the terms of the oral agreement that Continental alleges Pye-Barker breached.

Because Continental sufficiently stated a breach of contract claim, Pye-Barker's motion to dismiss that claim will be denied.

3. *Subrogation*

Pye-Barker also contends that the complaint fails to state a claim for subrogation. Dkt. 9 at 11–12.[4] In its view, while Continental has alleged that it issued an insurance policy to W&L, and that it "reimbursed" W&L "for damages sustained," Continental has "not allege[d] that its purported payments were made pursuant to any coverage obligations under its policy." *Id.* at 11. In addition, Pye-Barker contends that the Complaint only alleges that "W&L sustained damage caused by water from the sprinklers which extinguished the fire," and that Continental "cannot be subrogated to any third-party, including Pye-Barker, where it alleges that the damages sustained by W&L were the result of water damage from the sprinklers." *Id.* at 11–12.

Pye-Barker's argument fails. Pye-Barker concedes that Continental has alleged "it issued a policy of insurance to W&L, and that it reimbursed W&L for damages sustained." Dkt. 9 at 11 (cleaned up). The Amended Complaint also alleges that Continental "provided a policy of insurance to [W&L] for damages to its property, including the Hillel House located at 117 W. Washington Street, Lexington, Virginia," and that "[t]his insurance was provided and issued under Continental Casualty policy number 4084750204." Am. Compl. ¶ 1. Continental has also alleged that it "reimbursed W&L in the amount of $533,766.51 for damages sustained, and W&L incurred a $25,000 deductible, resulting in $558,766.51 in total damages." *Id.* ¶ 15. And Continental has alleged that "[b]y virtue of its payments, Continental Casualty is subrogated to W&L's right or recovery against any third party, including Pye-Barker, for damages arising out of the aforementioned incident." *Id.* ¶ 16. Contrary to Pye-Barker's position, based on these and

---

[4] Continental's allegations concerning its claim of subrogation are found throughout the Amended Complaint, though there is no separately enumerated subrogation count.

other allegations, the Amended Complaint sufficiently alleges that Continental made the payments pursuant to its coverage obligations to W&L under its policy. *See* Dkt. 9 at 11.

Pye-Barker's argument that Continental cannot be subrogated to any third-party based on damages sustained as a result of water damage from the sprinklers is a red herring. If water damage from the sprinklers were a truly independent event, that argument would have some merit, but here the Amended Complaint alleges the sprinklers were activated following the failure of the range hood fire suppression system, for which Defendant was contractually required to perform service and inspection.

## Conclusion

For the foregoing reasons, the Court will **GRANT in part** Pye-Barker's motion to dismiss as to Continental's negligence claim, and **DENY in part** the motion to dismiss as to its breach of contract and subrogation claims. Dkt. 8.

It is so **ORDERED**.

The Clerk of the Court is directed to send this Memorandum Opinion & Order to all counsel of record.

Entered this __28th__ day of March, 2024.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE